United States District Court
Southern District of Texas
**ENTERED**
September 28, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **LEONARDO NAZARIO OSORIO,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:26-CV-07711** |
| | § | |
| **MARTIN FRINK, *et al.*,** | § | |
| | § | |
| **Respondents.** | § | |
| | § | |

**MEMORANDUM AND ORDER**

Before the Court is Petitioner Leonardo Nazario Osorio's Petition for Writ of Habeas Corpus (ECF No. 1) and Respondents' Motion To Stay, and in the Alternative, Motion For Summary Judgment (ECF No. 5). For the following reasons, the Court **GRANTS IN PART** the Petition for Habeas Corpus and **DENIES** Respondents' Motion for Summary Judgment.

## I. BACKGROUND

The parties do not dispute the following facts. Leonardo Nazario Osorio is a citizen of Cuba who entered the United States on May 30, 2019, pursuant to humanitarian parole. ECF No. 1 ¶ 1, *Id*. at Exh. 2. His parole expired in December 2022. ECF No. 1 at ¶ 1. He has resided continuously in the United States since he was paroled. ECF No. 1 ¶ 16. He has no criminal history and possesses an employment authorization document. *Id*. Petitioner has a pending application for adjustment under the Cuban Adjustment Act. ECF No. 1 ¶¶ 17-18.

On August 30, 2026, Petitioner was detained by Immigration and Customs Enforcement (ICE) following when a sheriff's deputy approached the car in which Petitioner was a passenger

and stated he smelled marijuana. *Id*. at ¶ 22. He was issued a Notice to Appear (NTA). ECF No. 1-2 at 4. Respondent's position is that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. 1225(b)(2). ECF No. 5 at 2.

## II. RESPONDENTS' REQUEST FOR A STAY IS DENIED

Respondents request that the Court stay its ruling on Petitioner's habeas petition in light of the Fifth Circuit's published order granting the Government's motion for stay of the district court judgments pending the Fifth Circuit's *en banc* decision in *Sosnava Rodriguez*. *See Rodriguez v. Ortega*, ---F.4th---, 2026 WL 2104747 (5th Cir. July 21, 2026) ("Appellants' opposed motion for stay of the district court judgments pending rehearing *en banc* is GRANTED."). On August 27, 2026, the Fifth Circuit published another order granting stays in the following consolidated cases pending the en banc resolution of *Rodriguez v. Ortega*: *Tolentino-Rodriguez*, *Gonzalez Gonzalez*, and *Perozo-Mata*. *See Tolentino-Rodriguez v. Blanche*, No. 26-20424, Dkt. 32, at 3 (5th Cir. Aug. 27, 2026) (per curiam).

The Fifth Circuit's published stay order in *Tolentino-Rodriguez v. Blanche* stays the appeal of three cases from this Court pending the resolution of *Rodriguez v. Ortega*. No. 26-20424, Dkt. 32, at 3 (5th Cir. Aug. 27, 2026) (per curiam). With due respect for the precedential authority of the Fifth Circuit's published orders, this Court recognizes the controlling influence of the stay in those cases. *See* 5th Cir. R. 47.5 (published decisions are precedential). The Fifth Circuit has stayed those cases, and they shall remain so, pending the resolution of *Rodriguez v. Ortega*.

However, in the instant matter, Respondents are not asking to enforce the stay in one of those three cases. Instead, Respondents appear to argue that the Fifth Circuit's one-sentence order granting a stay of the underlying district court judgments in *Sosnava Rodriguez* and the similarly

unexplained order in *Tolentino-Rodriguez* have the extraordinary effect of barring all district courts from granting habeas petitions by noncitizens detained pursuant to 8 U.S.C. § 1225(b)(2) on any due process ground.

In support of this proposition, Respondents rely on *Trump v. Boyle*, arguing that interim orders "inform how a court should exercise its equitable discretion in like cases[,]" and so this Court should stay the pending case, based on the Fifth Circuit's stay order. 145 S. Ct. 2653, 2654 (2025). However, this argument proves unavailing. The disposition of *Boyle* was "squarely controlled by *Trump v. Wilcox*, 605 U.S. ----, 145 S. Ct. 1415, 221 L.Ed.2d 985 (2025)", in which the Supreme Court weighed the risk of harm to the government against the risk of harm to the removed officer in reaching its determination on whether to issue a stay. *Id.* In other words, the Supreme Court's resolution of *Wilcox* provided reasoning and explanation from which lower courts could derive meaning and direction. That explanation is nowhere to be found in the Fifth Circuit's orders in both *Rodriguez v. Ortega* and *Tolentino-Rodriguez v. Blanche*.

The interim stay order from the Fifth Circuit is *not* a conclusive ruling on the merits. *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (Kavanaugh, J., concurring) (finding that a stay order in a voting rights case does not change any underlying substantive voting rights law). The Fifth Circuit itself has explained that "guess[ing] the meaning of unexplained grants of a stay" makes it "even more difficult rationally to order outcomes." *Selvage v. Lynaugh*, 842 F.2d 89, 94-95 (5th Cir. 1988), *vacated sub nom. on other grounds Selvage v. Collins*, 494 U.S. 108, (1990). In the face of uncertainty, the Fifth Circuit chose to "apply the settled law of our circuit until it is changed" in the pursuit of "rational and evenhanded justice." *Id*. at 95. Rather than accept the Respondent's invitation to speculate about the meaning of the Fifth Circuit's stay order, this Court joins its sister courts across the Fifth

Circuit in applying the law as it currently stands. *See, e.g.*, *Angel Eduardo Chen Coy, v. Warden, et al.*, 5:26-cv-00774, 2026 WL 2597945, at *2 (S.D. Tex. Sep. 2, 2026) (Kazen, J.); *Alvarado Rodriguez v. Ortega*, 1:26-CV-1903-RP (W.D. Tex. Sep 1, 2026) (Pitman, J.); *Cedillo-Cedillo v. Warden, Richwood Correctional Center, et al.*, 26-2449, 2026 WL 2771517, at *5 (W.D. La. Sep. 17, 2026) (Edwards, Jr. J.); *Guerra Estrada v. De Anda Ybarra*, No. EP-26-CV-1897-KC, 2026 WL 2168090, at *1 (W.D. Tex. July 28, 2026) (Cardone, J.); *Rodriguez v. Blanche*, No. EP-26-CV-01769-DCG, 2026 WL 2221493 (W.D. Tex. Aug. 3, 2026) (Guaderrama, J.).

Respondents ask this Court to stay proceedings in the case at bar, which is entirely unrelated to the stayed cases. The factors that a district court must consider in determining whether to stay proceedings pending the resolution of a different case are laid out in *Landis v. North American Co*. 299 U.S. 248 (1936). The Supreme Court found that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," and the movant's burden is especially high "if there is even a fair possibility that the stay for which he prays will work damage to some one [sic] else." *Id.* at 255. Where the stay is likely to damage another's interests, the movant must show that letting the litigation proceed would cause "hardship or inequity," *id.*, and courts have held that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'" *Rodriguez*, 2026 WL 2221493, at *13, *quoting Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *see also Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 546 (5th Cir. 1983) ("Nor is there a showing that the difficulties inherent in the general situation, including potential judicial inefficiency, constitute a sufficient offset to the plaintiffs' rights to proceed without inordinate delay to a resolution of their claims").

Applying *Landis* to the present case, a detainee seeking habeas relief has a uniquely significant interest in receiving a prompt ruling with regards to his potentially unconstitutional detention, and he suffers great damage from a delay in his proceedings. *See Harris v. Nelson*, 394 U.S. 286, 291-92, (1969) (internal citations omitted) ("[H]abeas corpus is the great and efficacious writ, in all matter of illegal confinement. . . . [T]he office of the writ is to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. . . . [A] habeas corpus proceeding must not be allowed to founder in a procedural morass.") While Respondents have argued their countervailing interest in avoiding the burden of litigation, the Fifth Circuit has pointed out that the "basic incident[s] of litigation" cannot meet the burden of a clear case of hardship or inequity that the movant must establish for a stay of proceedings in any case, much less a case where a detainee's liberty interest is at stake. *See In re Desoto Cnty.*, Mississippi, No. 26-60020, 2026 WL 147775 (5th Cir. Jan. 20, 2026). Accordingly, the case before the Court is not one of the "rare circumstances" where this extraordinary remedy is appropriate. *Landis*, 299 U.S. at 225.

The Fifth Circuit acknowledges that a district court does not "usurp" a higher court when it proceeds with other matters while a case with related legal issues awaits resolution in the court of appeals. *In re Desoto Cnty.*, 2026 WL 147775, at *2. "All federal courts—whether 'supreme' or 'inferior'—are equally 'vested' with '[t]he judicial Power of the United States.'" *Id.* (quoting U.S. CONST. art. III, § 1). Incident to that power is the "duty . . . to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). Thus, while the Fifth Circuit's *en banc* decision in *Sosnava Rodriguez* is pending for an unknown period of time, district courts continue to have, not only the ability, but the obligation to resolve unrelated cases by applying the law as it stands. This

Court rejects Respondents' invitation to anticipate the outcome of *Sosnava Rodriguez* without the Fifth Circuit's guidance. For these reasons, the Motion to Stay is denied.

## III. PETITIONER'S DETENTION VIOLATES HER PROCEDURAL DUE PROCESS RIGHTS.

Petitioner argues, among other claims, that his detention violates his Fifth Amendment right to due process of law. The Court agrees.

The Court recently addressed a similar set of facts in *Salvador Rodriguez v. Frink*, --- F.Supp.3d ----, No. 4:26-CV-01169, 2026 WL 709487 (S.D. Tex. Mar. 13, 2026) (Ellison, J.). There, the petitioner was a long-term resident of the United States who had entered the country without inspection and, like Petitioner here, had no current legal status. In *Salvador Rodriguez*, this Court found that the petitioner's ongoing mandatory detention violated her substantive due process rights because the "detention [did] not 'bear a reasonable relation to the purpose for which she was committed.'" *Salvador Rodriguez*, 2026 WL 709487 at *10 (quoting *Demore v. Kim*, 538 U.S. 510, 527 (2003)). The Court also concluded that the *Mathews v. Eldridge* balancing test provided an applicable framework through which to assess the reasonability of the petitioner's detention in relation to its statutory purpose. *Id*. at *6-8. For the reasons previously articulated in that case, the Court finds that the *Mathews* framework is likewise applicable here.

Under *Mathews*, courts examine "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Black v. Decker*, 103 F.4th 133, 149 (2d Cir. 2024) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

The first factor favors Petitioner. Here, Petitioner was previously allowed to enter the United States as a humanitarian parole recipient in 2019.[1] While Petitioner failed to renew his parole after it expired in December of 2022, this failure does not alter the fact that Petitioner has a protected liberty interest in his freedom from detention and the life he has established in the country in the nearly seven years since his entry. Petitioner has extensive family ties in the country, steady employment, and an established residence. *See* ECF No. 1 ¶ 16.

The second *Mathews* factor likewise favors Petitioner. The initial grant of humanitarian parole included a finding by the government that Petitioner "present[s] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5. Although Petitioner allowed his parole to expire, there is no indication that Petitioner now presents a risk of absconding or a security risk when he did not in 2019. Since the purpose of detention under § 1225(b) is to prevent flight, the fact that Petitioner was previously granted humanitarian parole suggests a high risk that Petitioner is being erroneously deprived of his liberty. Additionally, Petitioner has applied for adjustment of status under the Cuban Adjustment Act. ECF No. 1 ¶ 18. This application remains pending before USCIS.

As to the government's interest, while "Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live. . . such concerns. . . would be squarely addressed at a bond hearing." *Guevara Carabantes v. Bondi, et al.*, No. 1:26-CV-446-RP, 2026 WL 689995, at *4 (W.D. Tex. Mar. 5, 2026). The third factor thus weighs in favor of Petitioner.

---

[1] This entry did not constitute "admission" for the purposes of § 1225(b).

Because the Court agrees with Petitioner that his ongoing detention violates the Due Process Clause, it declines to address his additional arguments.

## IV. REMEDY

In *Salvador Rodriguez*, the Court concluded that "the appropriate remedy [for the violation of the petitioner's due process rights] [wa]s a bond hearing at which the Government bears the burden of proving by clear and convincing evidence that 'continued detention is needed to prevent [Petitioner] from fleeing or harming the community.'" *Salvador Rodriguez*, 2026 WL 709487 at *10 (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213-14 (3d Cir. 2020)).

Under the facts of this case, however, the Court is persuaded that immediate release from custody is appropriate. "[I]n habeas cases where the Court finds an ongoing detention unlawful, 'the typical remedy for such detention is, of course, release.'" *Guevara Carabantes*, 2026 WL 689995 at *5 (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). This Court has found that immediate release is appropriate in cases where a noncitizen habeas petitioner was previously released on an Order of Release on Recognizance (ORR), in part because "release from immigration custody on an ORR necessarily 'reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'" *Perea-Berrio v. Tate, et al.*, No. 4:26-CV-01568, 2026 WL 709481, at *3 (S.D. Tex. Mar. 13, 2026) (internal citations omitted). While Mr. Nazario Osorio was previously released via humanitarian parole rather than an ORR, release on parole likewise implies a prior determination that Mr. Nazario Osorio does not pose a flight risk or danger. *See also Hassen*, 2026 WL 446506, at *2 (W.D. Tex. Feb. 9, 2026) ("[T]hat Petitioner was paroled into the United States, rather than released on his own recognizance, is 'a

distinction without a difference.'") (quoting *Guerra-Miranda v. Bondi*, No. EP-26-CV-00028-KC (W.D. Tex. Jan. 21, 2026)). It is true that here, Petitioner's parole had expired at the time he was taken into custody. However, this fact suggests only that a year had passed from the date that parole was granted, not that Mr. Nazario Osorio became a flight risk or danger to the community when his parole expired in December 2022. This is particularly true given the fact that Respondents did not detain Petitioner until years after his parole expired. ECF No. 1 at ¶¶19-21. The prior finding that Petitioner "present[s] neither a security risk nor a risk of absconding" therefore suggests that immediate release is appropriate. 8 C.F.R. § 212.5.

The Court therefore **ORDERS** as follows.

1. Respondents are **ORDERED** to release Petitioner from custody within **48 hours** under the conditions, if any, of his previous release via humanitarian parole.
2. Respondents must release Petitioner in a public place within the Southern District of Texas, and must notify his counsel or next friend of the time and place of his release **no less than three hours** prior to his release from custody.
3. Respondents may not re-detain Petitioner during the pendency of his removal proceedings absent notice and a hearing before an IJ at which the government demonstrates, by clear and convincing evidence, that he is a flight risk or a danger to the community. Respondents similarly may not subject Petitioner to additional conditions of release without a similar hearing at which the government bears the burden of showing why new conditions are necessary.
4. Respondents must return all personal property to Petitioner upon release, including all identity documents such as a social security card, Employment Authorization Document, driver's license, and/or passport.

The Court further **ORDERS** that Respondents file an advisory with the Court **on or before September 30, 2026**, informing the Court of the status of Petitioner's release.

The Court further **ORDERS** that, following Petitioner's release, the parties **SHALL CONFER** and **FILE** a notice informing the Court whether any matters remain to be resolved in this case **on or before October 5, 2026.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on September 28, 2026

Keith P. Ellison
United States District Judge